**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| SANDIE SKRLAC, | ) | Case No. CV 04-09868-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Sandie Skrlac ("Plaintiff") seeks review of the Commissioner's final decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons stated below, the Commissioner's decision is AFFIRMED and this action is dismissed with prejudice.

I.    **BACKGROUND**

Plaintiff was born on October 3, 1950 and was 52 years old at the time of the administrative hearing. (Administrative Record ("AR") at

1

45).  She obtained a high school equivalency certificate in 1974 and completed one year of college. (AR at 102). Plaintiff filed applications for SSI and DIB on March 16, 2001, alleging disability since April 14, 1998, primarily due to fibromyalgia and epicondolitis. (AR at 65).  Both claims were denied initially on June 21, 2001 (AR at 30-33).   These denials were not appealed.

Plaintiff filed new applications on February 8, 2002 (AR at 45-47, 215-16).   Her applications were denied in an initial administrative determination (AR at 34-37). A hearing was held before Administrative Law Judge (ALJ) Peter J. Baum on December 18, 2002 (AR 239-67). Plaintiff was not represented by counsel, but did testify at the hearing on her own behalf.  A vocational expert also testified at the hearing. The ALJ issued a decision dated April 15, 2003, denying applications and finding her to not be under a "disability," as defined in the Social Security Act. (AR 11-20). In doing so, the ALJ found the plaintiff's allegations regarding her limitations not totally credible.

In that decision, the AlJ found that Plaintiff suffers from fibromyalgia, anxiety, and depression. (AR at 19).  However, the ALJ found these medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1, Regulations No. 4. (AR at 19).

The ALJ noted that Plaintiff attempted to work in 2001 as a lab courier, but allegedly was terminated because she was too slow. The ALJ therefore found this to be a failed work attempt (20 CFR §§ 404.1574, 416.974). He further found that the claimant had not engaged in substantial gainful employment since the alleged onset of disability.

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work.  Where it has been established that the claimant

1  cannot perform her past relevant work, the burden shifts to the
2  Commissioner to show that Plaintiff is capable of performing jobs that
3  exist in significant numbers in the economy.  The ALJ assessed Plaintiff
4  with a residual functional capacity to perform less than the full range
5  of light work, but that she could still lift and carry 20 pounds
6  occasionally and 10 pounds frequently, sit, stand, walk, squat, kneel,
7  crouch, and crawl 6 hours a day, and reach with the arms and manipulate
8  with the hands for 4 hours a day.  Based on Plaintiff's residual
9  functional capacity, age, education, and work history, the ALJ
10 determined that Plaintiff was capable of performing other work that
11 exists in significant numbers in the economy, including work as a
12 surveillance systems monitor. (AR at 18).

13      Plaintiff filed a request for review with the Appeals Council (AR
14 at 219-38) which was denied on October 28, 2004. (AR at 6-9).  This
15 civil action ensued.  The parties filed a Joint Stipulation of disputed
16 issues on August 22, 2005.  Plaintiff contends that remand is required
17 because (1) the lack of counsel caused prejudice and unfairness in the
18 administrative proceedings, (2) the hypotheticals posed by the ALJ to
19 the vocational expert did not accurately reflect the plaintiff's
20 residual functional capacity, (3) the ALJ improperly evaluated
21 Plaintiff's subjective symptoms and credibility, and (4) that new and
22 material evidence not available at the time of the administrative
23 hearing should have been considered by the Appeals Council (Joint
24 Stipulation at 4, 8, 12, 17).  The Commissioner requests that the ALJ's
25 Decision be affirmed.  (Joint Stipulation at 19).  The Joint Stipulation
26 has been taken under submission without oral argument.

27 \\

28 \\

3

## II.   **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's final decision to deny benefits. The findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

## III.   **DISCUSSION**

### A.   **The Lack of Counsel At the Administrative Hearing Does Not Require Remand**

Plaintiff claims that the absence of representation caused prejudice and unfairness in the administrative proceedings, requiring remand. However, lack of counsel alone is not sufficient grounds for remand. The claimant must demonstrate prejudice or unfairness in the administrative proceedings to be entitled to relief by way of remand. *Hall v. Secretary of HHS*, 602 F.2d 1372, 1378 (9th Cir. 1979). Here, there is no such showing.

4

1    Prior to the hearing, notice was sent to Plaintiff advising her of
2    her right to legal or other representation, advice that was repeated at
3    the hearing. (AR at 21-24).   At the hearing, the ALJ asked Plaintiff
4    whether she wanted to proceed or postpone the case until she could find
5    an advocate. Plaintiff chose to proceed. (AR at 242). The ALJ explained
6    the hearing process to Plaintiff and asked her whether there was any
7    additional evidence she wanted him to consider. (AR at 242-44). The ALJ
8    asked Plaintiff about her symptoms, limitations and treatment and
9    offered to postpone his decision to allow submission of new psychiatric
10   evidence.  The ALJ also asked Plaintiff if she had any objection to the
11   testimony of the vocational expert, and then if she had any questions
12   for the vocational expert. (AR at 266).

13       The Court finds that the ALJ thoroughly advised plaintiff of her
14   right to obtain counsel before proceeding with the hearing.   When
15   Plaintiff elected to so proceed, the ALJ thoroughly explained to
16   Plaintiff the hearing procedure and her options. Plaintiff has failed to
17   demonstrate any prejudice or unfairness arising from the hearing which
18   would entitle her to relief.  To the extent that Plaintiff argues that
19   absence of counsel prevented her from challenging the hypothetical
20   questions posed by the ALJ, those arguments merge with her second claim,
21   that the hypotheticals posed by the ALJ to the vocational expert
22   inaccurately reflected her residual functioning capacity.  The alleged
23   error is unrelated to the absence of counsel.

24   **B. The Hypothetical Posed to the Vocational Expert Was Factually**
25   **   and Legally Sufficient**

26       Plaintiff claims that the hypotheticals posed by the ALJ to the
27   vocational expert inaccurately reflected her residual functioning
28   capacity. (Joint Stipulation at 8). Specifically, Plaintiff claims that

the ALJ improperly failed to include the work restrictions found by Ernest Bagner III, M.D. on April 23, 2002, during his consultative psychiatric examination of her, as well as all of the restrictions assessed by reviewing State Agency psychiatrists Yew Yee Wong and C.H. Dudley on June 20,2001 and May 20, 2002, respectively. (Joint Stipulation at 9).

On April 23, 2002, Plaintiff underwent a consultative psychiatric evaluation by Dr. Bagner. Plaintiff contends that the ALJ's hypotheticals should have addressed the fact that Dr. Bagner noted in his Functional Assessment that "presently, the patient is markedly dysphoric and moderately anxious." (AR at 178). However, this was an observation of her behavior at the time of the interview, and not part of the final assessment. The ALJ included every aspect of Dr. Bagner's functional assessment in his hypothetical, including the portion Plaintiff specifically claims was left out: that plaintiff "would have moderate limitations handling normal stresses at work." (*See* Joint Stipulation at 9; ALJ hypothetical, AR at 263). Consequently, the ALJ did not err with respect to including Dr. Bagner's findings in his hypothetical questions. Indeed, he included every sentence of Dr. Bagner's conclusions, word for word.

Plaintiff also claims that the ALJ erred in failing to consider all of the restrictions assessed by Drs. Wong and Dudley, the reviewing State Agency psychiatrists, when posing his hypothetical questions. (Joint Stipulation at 9). Specifically, Plaintiff claims that the ALJ erred in failing to include in his hypothetical to the vocational expert all of the check-marked restrictions found in the Mental Residual Functional Capacity Assessments prepared by Drs. Wong and Dudley. (AR 165-166, 194-195). (Joint Stipulation at 9).

State agency medical consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 416.927(f)(2)(i).  Unlike the opinions of treating physicians, opinions of State agency medical consultants are not presumptively entitled to any particular weight. *See* 20 C.F.R. § 416.927(f)(2)(i)("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants[.]").  TShe ALJ "must consider findings of State agency medical and psychological consultants," according to the criteria governing all medical opinions. *See* 20 C.F.R. § 416.927(f)(2)(i), (ii); Social Security Ruling 96-6p (the ALJ "may not ignore" the opinions of State agency physicians concerning "the nature and severity of an individual's impairment(s)," and indeed the ALJ "must explain the weight given to these opinions in their decisions.")  Moreover, "[u]nless [a] treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant[.]"  20 C.F.R. § 404.1527(f)(2)(ii).  The opinion of non-examining medical advisors, like Dr. Wong and Dr. Dudley, may serve as substantial evidence when supported by and consistent with substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In his decision, the ALJ found that the opinions of the State Agency physicians were "consistent with the objective medical evidence" and that the opinions of the consultative examiners warrant "significant weight." (AR at 18).  Therefore, the ALJ did not discredit the findings Drs. Wong and Dudley, but rather found that their conclusions were consistent with the body of objective medical evidence.  Therefore, the issue here is whether the ALJ acted improperly by not including in the

7

hypothetical he posed to the vocational expert the exact language of the checkmarked restrictions indicated by Yew Yee Wong and C.H. Dudley on their Functional Capacity Assessments (AR 165-166, 194-195).

Under the governing legal standard, "[i]n order for the testimony of a [vocational expert] to be considered reliable, the hypothetical posed must include all of the claimant's functional limitations, both physical and mental, supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal quotation marks omitted) (citing *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) ("[T]he ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations."). Hypothetical questions posed to the vocational expert need not include all alleged limitations, but only those limitations the ALJ finds to be supported by the record. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

Here, the ALJ's hypothetical sufficiently incorporated all of Plaintiff's limitations. In posing his hypothetical, the ALJ predominantly relied on the findings of the examining physicians, Dr. Bagner and Dr. Bruce. Generally, the ALJ shall "give more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [a claimant]." 20 CFR §§ 404.1527. In addition, the ultimate conclusions of the non-examining physicians were based upon and identical to those of the examining physicians, Dr. Bagner and Dr. Bruce. Dr. Bagner found that the Plaintiff would have no limitations completing simple tasks, that she would have mild limitations interacting with supervisors, peers, and the public; completing complex tasks; and completing a normal workweek without

8

limitation; mild to moderate limitations maintaining concentration and attention; and moderate limitations handling normal stresses at work. Dr. Bruce found that there was no compelling evidence indicating the presence of an ongoing psychiatric illness that was severe enough to render her unable to work.  All of these findings were properly incorporated into the ALJ's hypothetical.[1]

Dr. Dudley concurred with the findings of Dr. Bagner. Dr. Dudley's functional capacity assessment of Plaintiff's limitations stated that he adopted the "CE MSS," meaning Dr. Bagner's "medical source statement" (AR at 178, 196).  Dr. Wong, the other non-examining physician, predominantly relied on the findings of Dr. Bagner, stating in his functional capacity assessment that Plaintiff was capable of simple, as well as detailed and complex work, adding that her contact with co-workers and the public should be kept brief. (AR at 167).  The ALJ correctly found that the State Agency doctors had concluded Plaintiff did not have a disabling mental impairment, and that these opinions were consistent with the objective medical evidence. (AT at 18, 190).

---

[1]   The exact hypothetic posed by the ALJ is as follows: "I would like you to assume that we are discussing a lady who was 48 at the time of her alleged onset date.  She is now 52 years of age.  Assume that she had not only a high school diploma, but a one year business college course with a certificate in stenography. . . I would like you to assume. . . that this lady is limited as follows. . .Specifically, I would like you to assume that this lady is able to sit, stand, walk, squat, crouch, kneel and crawl six hours a day.  She is able to lift 20 pounds occasionally and 10 pounds frequently. She is able to reach with the arms and manipulate with the hands four hours a day. In addition to that set of physical limitations, I would like you to assume that this lady has the following set of mental limitations: Assume . . .that she would have no limitations completing simple tasks. She would have mild limitations interacting with supervisors, peers and the public; completing complex tasks; and completing a normal workweek without interruption. She would have mild to moderate limitations maintaining concentration and attention. She would have moderate limitations handling normal stresses at work. (AR at 262-63).

1    The ALJ's hypothetical question to the vocational expert was

2 supported by Dr. Bagner's and Dr. Bruce's opinions, and also by the

3 final analysis of the state agency physicians.  No more was required.

4 The hypothetical need not incorporate every check-marked restriction

5 word-for-word.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir.

6 2002)(hypothetical in which the ALJ credited the medical expert's

7 testimony that the plaintiff often experienced deficiencies in

8 concentration, persistence or pace adequately incorporated the

9 plaintiff's functional limitations in concentration, persistence and

10 pace) and *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997)(holding

11 that hypothetical including the "ability to do only simple routine

12 repetitive work, which does not require close attention to detail"

13 sufficiently describes ALJ's finding that the plaintiff often had

14 deficiencies of concentration, persistence or pace).  Moreover, an ALJ

15 is not required to discuss all evidence presented, but only must explain

16 why significant, probative evidence is rejected. *Vincent v. Heckler*, 739

17 F.2d 1393, 1394-95 (9th Cir. 1089).

18    The ALJ's hypothetical and conclusions were amply supported by the

19 opinions of the examining physicians, and also by the final conclusions

20 of the non-examining State Agency physicians.  The hypothetical posed by

21 the ALJ therefore properly reflected Plaintiff's residual functioning

22 capacity and it was not error for the ALJ to rely on the conclusions of

23 the vocational expert.

24    **C. ALJ Properly Evaluated Plaintiff's Credibility**

25    Plaintiff also contends that the ALJ did not properly evaluate her

26 subjective symptoms and credibility.  Plaintiff testified that she has

27 severe pain, cannot groom herself without severe pain, cannot sleep or

28 concentrate on watching TV, and that she avoids going to the grocery

1    store because it is difficult for her to carry things (AR at 247, 253).

2    Under the governing legal standard, unless there is evidence that

3    a claimant is malingering, the ALJ can only reject the claimant's

4    subjective testimony regarding the severity of her symptoms by making

5    "specific findings stating clear and convincing reasons for doing so".

6    *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v.*

7    *Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993). Under this standard, it

8    is not sufficient for the ALJ to make general findings about the

9    claimant's testimony. *Dodrill*, 12 F.3d at 918. Rather, the ALJ must

10   specify which testimony is not credible and state the specific evidence

11   that suggests the testimony is not credible. *Id.* In determining

12   credibility, the ALJ may consider "ordinary techniques of credibility

13   evaluation," such as inconsistent statements, unexplained failures to

14   seek treatment, and the daily activities of the claimant. *Smolen*, 80

15   F.3d at 1284. The ALJ must also consider the "observations of treating

16   and examining physicians and other third parties regarding . . . the

17   nature, onset, duration, and frequency of the claimant's symptom;

18   precipitating and aggravating factors; functional restrictions caused by

19   the symptoms; and the claimant's daily activities." *Id.*

20   In this case, the ALJ provided numerous reasons and examples as to

21   why he found Plaintiff not to be credible. It is unnecessary to cite

22   every one of the ALJ's observations. It suffices to point out that each

23   of the ALJ's reasons is substantially supported.

24   First, the objective medical evidence does not fully substantiate

25   Plaintiff's claimed impairments, and there is some evidence of

26   malingering. While a lack of objective medical evidence cannot form the

27   sole basis for discounting a claimant's testimony, "it is a factor the

28   ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400

11

F.3d 676, 681 (9th Cir. 2005).  The ALJ notes that Dr. Warbritton stated that Plaintiff was not a surgical candidate and that she was basically unable or unwilling to accept any personal responsibility for her situation and projected blame onto other parties. (AR at 17).  The ALJ further notes that there is evidence that Plaintiff was less than fully cooperative and put forth less than maximal effort during examinations. The ALJ points out that Dr. Bruce observed that the Plaintiff made an inadequate effort on testing, and there were multiple inconsistencies noted between her performance and other observations and information. (AR at 17). The ALJ emphasized that the record includes evidence that strongly suggests that Plaintiff has exaggerated symptoms and limitations. The ALJ also noted that Dr. Bruce described Plaintiff as having marked, seemingly "over the top" histrionicity with what seemed like exaggerated somatic complaints and a strong disinclination to work. (AR at 17).

Second, the ALJ's finding that Plaintiff's treatment history was not commensurate with the alleged severity of her impairments is also supported.  The ALJ stated that there is evidence that the Plaintiff has not been entirely compliant in taking prescribed medications, or receiving the type of medical treatment that one would expect for a totally disabled person, suggesting that the symptoms may not have been as limiting as the Plaintiff alleged.  (AR at 17).  The ALJ specifically noted that the Plaintiff is not taking prescribed medication or psychotropic medication, and that she discontinued use of a elbow and wrist brace because they were uncomfortable. (AR at 17). This basis for discounting Plaintiff's credibility is legitimate and substantially supported. *See, e.g., Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995)(minimal treatment supported ALJ's

12

1   decision to discredit testimony).

2       Third, the ALJ's finding that Plaintiff exaggerated her symptoms

3   and gave inconsistent statements is substantially supported.   The ALJ

4   stated that "the nature, location, onset, duration, frequency, radiation

5   and intensity of the claimant's alleged impairments are not corroborated

6   by the record to the degree alleged." (AR at 17).   The ALJ noted that

7   Plaintiff testified that she drove 400 miles to the San Francisco Bay

8   area  from  Los  Angeles  in  three  hour  increments.  This  diminished

9   Plaintiff's allegation of an inability to concentrate. The ALJ further

10  stressed that both Dr. Bagner and Dr. Bruce described the Plaintiff as

11  well  dressed  with  good  grooming,  despite  her  testimony  that  she  was

12  unable to groom herself. (AR at 16).

13      In  sum,  the  ALJ's  credibility  determination  was  substantially

14  supported, and Plaintiff's claim to the contrary is without merit.

15      **D. New Evidence Does Not Support A Basis for Changing the ALJ's**

16  **Decision**

17      Finally,  Plaintiff  claims  that  new  evidence  submitted  to  the

18  Appeals  Council  constituted  new  and  material  evidence  and  thus  the

19  Appeals  Council  erred  in  finding  that  this  information  did  not  provide

20  a basis for changing the ALJ's decision. Specifically, the new evidence

21  consists of a Fibromyalgia Residual Functioning Capacity evaluation by

22  C. Ronald McBride, M.D., who Plaintiff claims is her treating physician.

23  In his evaluation, Dr. McBride opines that Plaintiff's prognosis is poor

24  and assesses a residual functional capacity of less than that required

25  for  sedentary  work.  Plaintiff  contends  that  this  new  evidence  is

26  material and contains documentation of severe impairments that create a

27  reasonable  possibility  that  the  outcome  of  the  case  would  be  different

28  were the evidence to be considered. (AR at 235-36).

1    Pursuant to 42 U.S.C. § 405(g) a court may at any time order
2  additional evidence to be taken by the SSA, but only if that new
3  evidence "is *material* and [] there is *good cause* for the failure to
4  incorporate such evidence into the record in a prior proceeding." *Booz*
5  *v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir.
6  1984) (emphasis in original); *see also Mayes v. Massanari*, 276 F.3d
7  453, 462 (9th Cir. 2001); 42 U.S.C. § 405(g).   New evidence meets the
8  materiality requirement if it "bear[s] directly and substantially on the
9  matter in dispute" and "there is a reasonable possibility that the new
10 evidence would have changed the outcome." *Booz*, 734 F.2d at 1380
11 (emphasis in original); *see also Mayes*, 276 F.3d at 462; *Cotton v.*
12 *Bowen*, 799 F.2d 1403, 1409 (9th Cir. 1986).   To be material, the new
13 evidence must relate to the period on or before the date of the ALJ's
14 decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2004).

15    Here, the Appeals Council correctly found that Dr. McBride's
16 assessment was not material to the ALJ's decision. (AR at 7).   Dr.
17 McBride's assessment was done on December 3, 2003, almost a year after
18 the   December 18, 2002 hearing before the ALJ.   Although Plaintiff
19 claims that Dr. McBride was her treating physician, he was not.   The
20 opinions of treating physicians are valued because they are able to
21 provide a "detailed, longitudinal picture" of medical impairment. 20 CFR
22 §§ 404.1527(2). Among other factors, a treating physician's opinion is
23 weighted according to the length of treatment, frequency of examination
24 and the nature and extent of the treatment relationship.   20 CFR §§
25 404.1527(2)(i)-(ii).

26    The Residual Functioning Capacity Assessment submitted by Plaintiff
27 was completed during her first visit to Dr. McBride. Plaintiff had never
28 seen Dr. McBride before the date of the assessment. Thus, the assessment

14

does not reflect the status of her condition over a long period of treatment.  Instead, it is a snapshot of her alleged condition taken almost a year after the ALJ decision.  It is perfunctory, offers little commentary, and appears entirely based on an survey filled out by the Plaintiff herself on the date of the exam.  Since the assessment did not relate to the time period relevant to the ALJ's decision, it has no probative value as to her condition during the relevant time period. Thus, the Appeals Council correctly found that Dr. McBride's December 3, 2003 assessment does not provide a basis for changing the ALJ's decision.

**VI.   CONCLUSION**

       In accordance with the foregoing discussion, IT IS ORDERED that the Commissioner's final decision be affirmed and the Plaintiff's request for relief be denied.  **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: September 23, 2005                    */S/ Marc L. Goldman*

                                   _____
                                   MARC L. GOLDMAN
                                   United States Magistrate Judge